UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL J. HOLLAND,<br><br>                    Plaintiff,<br><br>          v.<br><br>LEROY D. BACA, et al.,<br><br>                    Defendants. | Case No. CV 10-8129 AG (JC)<br><br>REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE<br><br>[DOCKET NOS. 10, 14] |

          This Report and Recommendation is submitted to the Honorable Andrew J. Guilford, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.

I.  **SUMMARY**

          On November 20, 2010, plaintiff Michael J. Holland ("plaintiff"), who is proceeding *pro se* and has paid the filing fee, filed the operative First Amended civil rights Complaint ("First Amended Complaint" or "FAC") pursuant to 42 U.S.C. § 1983 ("Section 1983").  The First Amended Complaint names as defendants Los Angeles County Sheriff Leroy D. Baca ("Baca"), Los Angeles County Sheriff's Department ("LASD") Commander Edward F. Rogner ("Rogner"), LASD Lieutenant Robert O. Blanks ("Blanks"), and LASD Contract

Manager Denise Oliver ("Oliver") in their official capacities only (collectively "defendants").  (FAC ¶¶ 4-7).  The First Amended Complaint essentially claims that defendants deprived plaintiff of "his livelihood and freedom to practice his chosen profession" when they revoked his security clearance without affording plaintiff adequate process, in violation of his Fourteenth Amendment right to due process – conduct which allegedly resulted in plaintiff being terminated by his private employer who was working under a government contract.  (FAC ¶¶ 20, 30, 40-41).

On November 24, 2010, defendant Baca filed, and defendants Rogner, Blanks and Oliver later joined ("Notice of Joinder"), a Motion to Dismiss the First Amended Complaint ("Defendants' Motion" or "MTD").  On December 30, 2010, plaintiff filed an Opposition to Defendants' Motion ("Opposition" or "Opp.").  On January 18, 2011, defendants filed a joint Reply ("Reply").  At the Court's direction, the parties subsequently filed supplemental briefs (respectively "Plaintiff's Supplement" and "Defendants' Supplement").

Based upon the record and the applicable law, and as further discussed below, Defendants' Motion should be granted and the First Amended Complaint and this action should be dismissed without leave to amend.

**II.    THE FIRST AMENDED COMPLAINT**

Liberally construed, the First Amended Complaint, which references several exhibits attached only to the original Complaint ("Complaint Ex."), alleges the following:

Plaintiff worked as a field supervisor for North American Security Inc. ("North American Security"), a company that provides armed guards to the County of Los Angeles (the "County"), the City of Los Angeles, and various other local governmental agencies.  (FAC ¶¶ 3, 8).  Prior to May 2009, the County granted plaintiff a Security Clearance.  (FAC ¶ 8).

///

1    While plaintiff was employed at North American Security, plaintiff's ex-wife

2    physically abused his two minor children.  (FAC ¶ 9).  In early May 2010, a teacher

3    at plaintiff's children's school and the children's babysitter each reported the abuse

4    to the Los Angeles County Department of Children and Family Services ("DCFS").

5    (FAC ¶ 9).  Around the same time, DCFS case workers interviewed plaintiff's

6    children, and each child confirmed that their mother (plaintiff's ex-wife) was the

7    perpetrator of the alleged abuse.  (FAC ¶ 10).  In plaintiff's children's medical

8    records, the children's mother is "again singled out as [the] perpetrator of [the]

9    abuse."  (FAC ¶ 11).

10    After several months passed without DCFS action against the children's

11    mother, plaintiff became concerned for his children's continued welfare,

12    specifically because the children's mother was still entitled to weekend visitation,

13    which plaintiff believed placed his children "in harm's way."  (FAC ¶ 13).

14    In July 2010, plaintiff called DCFS caseworkers.  (FAC ¶ 14).  The DCFS

15    caseworkers were "in dereliction of their dut[ies]" because they had not acquired or

16    reviewed the "Forensic Medical Evidence" which substantiated that plaintiff's

17    children had been abused by their mother.  (FAC ¶ 14).  Plaintiff verbally

18    threatened a DCFS caseworker with a lawsuit.  (FAC ¶ 15).

19    DCFS personnel then scheduled another interview of plaintiff's children.

20    (FAC ¶ 16).  DCFS personnel coerced plaintiff's younger child into "stat[ing] that

21    [plaintiff] now also spanks them."  (FAC ¶ 16).  Plaintiff's older child, however,

22    maintained that the children's mother was the "sole perpetrator of abuse," and that

23    "[plaintiff had] not spanked [his children] in a long time, but instead utilize[d]

24    time-outs, and loss of privileges."  (FAC ¶ 16).  DCFS caseworkers then wrote a

25    report which falsely alleged "that now both the mother and plaintiff [were]

26    responsible for the abuse."  (FAC ¶¶ 17, 30).  DCFS caseworkers "subsequently

27    placed [plaintiff] on the Child Abuse Central Index ("CACI"), which plaintiff is

28    currently opposing through the established grievance process."  (FAC ¶¶ 18, 30).

1  DCFS caseworkers also filed a petition "pursuant to WIC 300" in California state

2  "Dependency Court."[1]

3       DCFS caseworkers perjured themselves in their final report, placed plaintiff

4  on the CACI, and filed a petition in dependency court in retaliation for plaintiff's

5  threat to pursue legal action against them.  (FAC ¶ 30).

6       On or about September 2, 2010, defendant Oliver, "with the full knowledge

7  and complicity of [defendants Blanks, Rogner and Baca]," rescinded plaintiff's

8  County security guard clearance ("plaintiff's security clearance").  (FAC ¶ 19;

9  Complaint Ex. E).  "Defendants [used] the DCFS caseworker's report and

10 testimony in deciding to revoke plaintiff's security clearance. . . ."  (FAC ¶ 30).

11 Defendants revoked plaintiff's security clearance "pursuant to the policy of Los

12 Angeles County Contract 76435 & 76434 ("County Contract"), sub-paragraph

13 7.4.2 [("Sub-paragraph 7.4.2")] 'Background and Security Investigations.'"  (FAC

14 ¶ 19).  Sub-paragraph 7.4.2 states "County may request that the Contractor's staff

15 be immediately removed from working on the County Contract at any time during

16 the term of this Contract.  County will not provide to the Contractor or to the

17 Contractor's staff any information obtained through the County-conducted

18 background clearance."  (FAC ¶ 19) (internal quotation marks omitted).  North

19 American Security immediately terminated plaintiff.  (FAC ¶ 43).

20      Defendants "deprived [plaintiff] of his livelihood and freedom to practice his

21 chosen profession" because their revocation of plaintiff's security clearance

22 prompted North American Security to terminate plaintiff's employment.  (FAC

23 ¶ 20, 40-44).

24 ///

25

26 ─────────────────

27 [1]In California, DCFS social workers, among others, have the discretion to commence
   proceedings in state court to declare any minor a dependent child of the court pursuant to

28 California Welfare and Institutions Code section 300.  See Cal. Welf. & Inst. Code §§ 215, 325,
   330; Cal. Rule of Court 5.520(a).

4

1    Prior to revoking plaintiff's security clearance, defendants did not afford
2    plaintiff "the traditional safeguards required by 'due process of law'" including
3    (1) "access to information used to make the adverse determination regarding
4    plaintiff's fitness for a Los Angeles County Security Clearance"; (2) the
5    opportunity to challenge the evidence against him; and (3) the opportunity
6    "otherwise [to] confront his accusers."  (FAC ¶¶ 20, 30, 40-41).  Plaintiff tried to
7    contact defendant Oliver, defendant Blanks, and Los Angeles County Supervisor
8    Michael Antonovich "in an attempt to challenge the evidence and testimony used to
9    make the adverse decision regarding his security clearance," but to date has
10   received no response.  (FAC ¶ 36).

11   Defendants maintain a security clearance program, pursuant to Sub-
12   paragraph 7.4.2 ("security clearance program") which effectively permits
13   defendants to "deprive anyone of employment for any reason," while denying the
14   persons adversely affected any opportunity "to challenge the evidence or testimony
15   used to make [the] adverse security determinations".  (FAC ¶ 27).  Plaintiff alleges
16   that "[d]efendants enact administrative decisions that do not comport with
17   traditional forms of fair procedure and do so without explicit authorization by
18   either the President or Congress."  (FAC ¶ 35).

19   **III.   STANDARDS GOVERNING RULE 12(B)(6) MOTIONS**

20   A court should dismiss a complaint when its allegations fail to state a claim
21   upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  A complaint need only
22   include "a short and plain statement of the claim showing that the pleader is
23   entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "'[D]etailed factual allegations' are not
24   required."  Ashcroft v. Iqbal, __ U.S. __, __, 129 S.Ct. 1937, 1949 (2009) (quoting
25   Bell Atl. Corp. v. Twombly, 550 U.S. 554, 555 (2007) (stating that "a complaint
26   attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual
27   allegations")).  The Court must accept as true all factual allegations in the
28   complaint and must draw all reasonable inferences from those allegations,

construing the complaint in the light most favorable to the plaintiff. Pollard v. Geo
Group, Inc., 607 F.3d 583, 585 n.3 (9th Cir.), amended by 629 F.3d 843 (2010),
cert. granted by Minneci v. Pollard, __ S. Ct. __. 2011 WL 829076, 79 U.S.L.W.
3540 (U.S. May 16, 2011) (No. 10-1104); Westlands Water Dist. v. Firebaugh
Canal, 10 F.3d 667, 670 (9th Cir. 1993).

But the complaint must allege "sufficient factual matter, accepted as true, to
'state a claim to relief that is plausible on its face.'" Iqbal, 129 S. Ct. at 1949
(quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the
pleaded factual content allows the court to draw the reasonable inference that the
defendant is liable for the misconduct alleged." Id. at 1940 (citing Twombly, 550
U.S. at 556). A court should not accept "threadbare recitals of a cause of action's
elements, supported by mere conclusory statements," id., or "allegations that are
merely conclusory, unwarranted deductions of fact, or unreasonable inferences,"
Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir.), amended by 275
F.3d 1187 (2001). The Ninth Circuit recently stated that a complaint must be
(1) "sufficiently detailed to give fair notice to the opposing party of the nature of
the claim so that the party may effectively defend against it," and (2) "sufficiently
plausible that it is not unfair to require the opposing party to be subjected to the
expense of discovery." Starr v. Baca, 633 F.3d 1191, 1204 (9th Cir. 2011).

"In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not*
look beyond the Complaint to a plaintiff's moving papers, such as a memorandum
in opposition to a defendant's motion to dismiss." See Schneider v. California
Department of Corrections, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) (emphasis in
original; citations omitted). A court may, however, as the Court in this case has
done with respect to the exhibits attached to plaintiff's original Complaint,
consider documents properly submitted as part of the complaint or upon which the
complaint necessarily relies, if the authenticity of such documents is not contested.
Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001) (citations omitted);

1   Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n.19 (9th

2   Cir. 1990).

3          If the court finds that a complaint has failed to state a claim, dismissal may

4   be with or without leave to amend.  Lopez v. Smith, 203 F.3d 1122, 1126-30 (9th

5   Cir. 2000) (en banc).  A court may, as the Court in this case has done, consider

6   factual allegations outside of the complaint in determining whether to grant leave

7   to amend.  See Broam v. Bogan, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003).

8   Dismissal without leave to amend is appropriate only when the court is satisfied

9   that the deficiencies of the complaint could not possibly be cured by amendment.

10  Jackson v. Carey, 353 F.3d 750, 758 (9th Cir. 2003).

11  **IV.    DISCUSSION**

12         Although framed as a Fourteenth Amendment claim predicated upon the

13  alleged deprivation of livelihood and freedom to practice his chosen profession

14  without due process, the gravamen of plaintiff's claim is that defendants revoked

15  his security clearance without affording him adequate process and thereby caused

16  him to lose his job.  (FAC ¶¶ 20, 30, 40-41).  Plaintiff's allegations are insufficient

17  to state a claim against the defendants under Section 1983.

18         As a threshold matter, the Court notes that because plaintiff sues defendants

19  solely in their official capacities, his Section 1983 claim is construed as being

20  asserted directly against the County,  not the named individuals.  See Kentucky v.

21  Graham ("Graham"), 473 U.S. 159, 165 (1985) ("Official-capacity suits . . .

22  'generally represent only another way of pleading an action against an entity of

23  which the officer is an agent.'") (quoting Monell v. New York City Dep't. of Social

24  Services, 436 U.S. 658, 690 n.55 (1978)).  An official-capacity suit "is *not* a suit

25  against the official personally, for the real party in interest is the entity."  Graham,

26  473 U.S. at 166 (emphasis in original).  Where, as here, the government entity

27  receives notice and an opportunity to respond to the official-capacity suit, "[the]

28  ///

7

1    suit is, in all respects other than name, to be treated as a suit against the entity."

2    Graham, 473 U.S. at 166 (citation omitted).

3         A local government entity may be held liable under Section 1983 if a

4    constitutional violation was committed pursuant to a municipal policy, custom or

5    usage.  Monell, 436 U.S. at 691; see also Board of County Commissioners of Bryan

6    County, Oklahoma v. Brown, 520 U.S. 397, 402-04 (1997); Oviatt v. Pearce, 954

7    F.2d 1470, 1473-74 (1992).  "Neither a municipality nor a supervisor, however, can

8    be held liable under § 1983 where no injury or constitutional violation has

9    occurred."  Jackson v. City of Bremerton, 268 F.3d 646, 653-54 (9th Cir. 2001);

10   see also Quintanilla v. City of Downey, 84 F.3d 353, 355 (9th Cir. 1997)

11   (municipality not liable under Section 1983 for acts committed pursuant to

12   municipal policy or custom unless plaintiff shows the individual actors actually

13   violated his constitutional rights), cert. denied, 519 U.S. 1122 (1997).

14        Here, plaintiff contends that defendants' actions in revoking his security

15   clearance under the Sub-paragraph 7.4.2 of the County Contract effectively

16   deprived him of "his livelihood and freedom to practice his chosen profession"

17   without due process.  Plaintiff fails to state a claim for relief because the revocation

18   of a security clearance without process, even if it results in the loss of a job, does

19   not violate the Constitution.

20        A due process claim is cognizable only if there is a recognized liberty or

21   property interest at stake.  See Coakley v. Murphy, 884 F.2d 1218, 1220 (9th Cir.

22   1989) (citing Board of Regents v. Roth ("Roth"), 408 U.S. 564 (1972)).  No one

23   has a liberty or property interest in a security clearance, to continued employment

24   at a job that requires a security clearance, or to the ability to pursue employment

25   requiring a security clearance.  See Department of the Navy v. Egan ("Egan"), 484

26   U.S. 518, 528 (1988) ("It should be obvious that no one has a 'right' to a security

27   clearance."); Dorfmont v. Brown, 913 F.2d 1399, 1403-04 (9th Cir. 1990) (no

28   cognizable liberty or property interest in maintaining security clearance or

8

1    employment requiring such clearance), cert. denied, 499 U.S. 905 (1991).

2    Accordingly, under the Constitution, no process is due when a security clearance is

3    lost or employment is denied based on such loss.  Dorfmont, 913 F.2d at 1403

4    ("Where there is no right, no process is due under the Constitution."); Jamil v.

5    Secretary, Department of Defense, 910 F.2d 1203, 1209 (4th Cir. 1990) (since no

6    one has a "right" to security clearance, revocation thereof "does not infringe upon

7    one's property or liberty interests"), cert. denied, 499 U.S. 905 (1991).

8         Even though plaintiff frames his claim as one involving violations of his

9    protected liberty interests in his livelihood and his ability to practice his chosen

10   profession and his protected property interest in his employment, the Ninth Circuit

11   has rejected the notion that the loss of a security clearance which effectively

12   precludes an individual from holding a job which requires a security clearance

13   implicates the deprivation of a constitutional right.  See Dorfmont, 913 F.2d at

14   1399 (rejecting argument that there is a protected liberty in party's ability to

15   practice chosen profession or protected property interest in employment at specific

16   job which required security clearance).  The Ninth Circuit has reasoned that the

17   loss of a security clearance does not deprive one of the right to earn a living, but

18   rather denies one only the ability to pursue employment which requires such a

19   security clearance.  Id. at 1403 ("The ability to pursue . . . employment [requiring

20   security clearance] stands on precisely the same footing as the security clearance

21   itself.  If there is no protected liberty interest in a security clearance, there is no

22   liberty interest in employment requiring such clearance."); see also Roth, 408 U.S.

23   at 574 n.13 ("Mere proof . . . that [Roth's] record of nonretention in one job, taken

24   alone, might make him somewhat less attractive to some other employers would

25   hardly establish the kind of foreclosure of opportunities amounting to a deprivation

26   of 'liberty.'"); Cafeteria and Restaurant Workers Union, Local 473, AFL-CIO v.

27   McElroy, 367 U.S. 886, 895-96 (1961) (revocation of access to secure government

28   facility due to failure of worker, a cook, to meet security requirements did not

9

1   infringe on worker's right to follow chosen trade or profession as worker

2   "remained entirely free to obtain employment as a short-order cook or to get any

3   other job . . . with any other employer."), overruled on other grounds by Roth, 408

4   U.S. 564.  Indeed, plaintiff admits that other, albeit less desirable jobs remain

5   available to him in the security industry which do not require a County security

6   clearance (Plaintiff's Supplement at 3-4), demonstrating that he could not plausibly

7   allege that the loss of the security clearance in issue completely deprived him of his

8   ability to work.

9       To the extent plaintiff contends that the Supreme Court's decision in Greene

10  v. McElroy, 360 U.S. 474 (1959) permits a due process attack predicated on the

11  revocation of a security clearance (FAC ¶¶ 21-26, 28, 31; Plaintiff's Supplement at

12  5-6), the Ninth Circuit has held otherwise, noting that "although [Greene] appears

13  superficially to allow a due process attack on a security clearance decision, it in

14  fact does not.  The Court stated explicitly that it was not deciding what procedures

15  were constitutionally compelled, but only that [the petitioner in such case] could

16  not be deprived of certain procedures in the absence of authorization from the

17  President or Congress." Dorfmont, 913 F.2d at 1404.  The Ninth Circuit went on to

18  hold that a claim for denial of due process stemming from the revocation of a

19  security clearance is not a colorable constitutional claim.  Id.; see also Jamil, 910

20  F.2d at 1209 (revocation of plaintiff's security clearance did not violate due

21  process because no cognizable liberty or property interest was at stake).

22      Plaintiff's remaining contentions regarding the viability of his claim are

23  unpersuasive.  Contrary to plaintiff's contention, the First Amended Complaint

24  does not allege a deprivation of any "significant" or "important" interest similar to

25  those in the cases plaintiff cites in which procedural protections were found to be

26  required before any deprivation was permitted to occur.  (Plaintiff's Supplement at

27  6-7) (citing Wolff v. McDonnell, 418 U.S. 539, 557-58 (1974) (prison disciplinary

28  proceedings involving potential loss of good time); Perry v. Sindermann, 408 U.S.

10

593 (1972) (continued employment arising from "mutually explicit

understandings"), overruled on other grounds, Rust v. Sullivan, 500 U.S. 173

(1991); Stanley v. Illinois, 405 U.S. 645 (1972) (custody of one's own children);

Bell v. Burson, 402 U.S. 535 (1971) (state-issued driver's license); Wisconsin v.

Constantineau, 400 U.S. 433 (1971) (right to purchase liquor in common with other

citizens); Goldberg v. Kelly, 397 U.S. 254 (1970) (state-granted welfare benefits);

Sherbert v. Verner, 374 U.S. 398 (1963) (unemployment compensation), abrogated

on unrelated grounds, Employment Division, Department of Human Resources of

Oregon v. Smith, 494 U.S. 872 (1990); Speiser v. Randall, 357 U.S. 513 (1958)

(tax exemption); Slochower v. Board of Higher Education of City of New York,

350 U.S. 551 (1956) (arbitrary discharge based on public employee's assertion of

Fifth Amendment privilege against self-incrimination).  Nor does the First

Amended Complaint allege the deprivation of a professional license or

"government-created job[]" which would implicate the requirements of due

process.  (Plaintiff's Supplement at 3-6) (citing In re Ruffalo, 390 U.S. 544 (1968)

(revocation of license to practice law subject to procedural due process

protections); Roth, 408 U.S. at 578 (entitlement to continued employment granted

by government statute, rule or policy implicates due process).  Plaintiff cites no

authority for his novel contention that a County security clearance is essentially a

state created license to work.  (Plaintiff's Supplement at 3-5).

     Nor, contrary to plaintiff's suggestion, is this a case where the requirements

of due process are implicated because "government action has operated to bestow a

badge of disloyalty or infamy, with an attendant foreclosure from other

employment opportunity."  Paul v. Davis, 424 U.S. 693, 705-06 (1976) (citations

omitted); see Roth, 408 U.S. at 573 ("[W]here a person's good name, reputation,

honor, or integrity is at stake because of what the government is doing to him,

notice and an opportunity to be heard are essential.") (citations and internal

quotation marks omitted).  Here, the First Amended Complaint does not reflect, and

11

plaintiff does not otherwise allege that defendants made any statements that stigmatized plaintiff in connection with the revocation of his security clearance or his allegedly consequent termination from North American Security.  To the contrary, plaintiff alleges that the policy governing the revocation of his security clearance, which allegedly resulted in his termination, prohibited the County from providing any information regarding the results of the background investigation for a County security clearance.  (FAC ¶ 19, 22; Complaint Ex. A at 2).  In addition, the County's notice to North American Security that plaintiff's security clearance had been revoked made no mention of the reason(s) therefor.  (Complaint Ex. E).  The fact that plaintiff's security clearance was revoked does not, by itself,  "bestow a badge of disloyalty or infamy" that would infringe on a protected liberty interest.  See Egan, 484 U.S. at 528 ("A [security] clearance does not equate with passing judgment upon an individual's character."); Molerio v. FBI, 749 F.2d 815, 824 (D.C. Cir. 1984) ("[T]o be denied [clearance] on unspecified grounds in no way implies disloyalty or any other repugnant characteristic" which might demonstrate a deprivation of liberty under Paul v. Davis).

Finally, in light of the foregoing discussion, plaintiff's attempt to distinguish Egan, Dorfmont and Jamil are unavailing.  Contrary to plaintiff's suggestion, the nature of the government entity (e.g., federal vs. local) involved in a decision to grant or revoke a security clearance is immaterial for the instant purposes.  In either case, the granting of a security clearance inherently involves discretionary judgment, and its revocation, without more, does not constitute an adjudication of one's character.  See Egan, 484 U.S. at 528.  Furthermore, irrespective of the fact that the plaintiffs in Egan, Dorfmont and Jamil may have been afforded some process prior to revocation of a security clearance, the clear holding in each such case – that there is no protected interest in a security clearance – remains dispositive here.

///

12

1        Accordingly, Defendants' Motion should be granted, and the First Amended

2   Complaint dismissed.  Since it is absolutely clear from plaintiff's briefing that

3   plaintiff cannot allege additional facts that might support a due process claim

4   stemming from defendants' revocation of plaintiff's security clearance, dismissal

5   should be without leave to amend.

6   **V.   RECOMMENDATION**

7        IT THEREFORE IS RECOMMENDED that the District Judge issue an

8   Order:  (1) approving and adopting this Report and Recommendation; (2) granting

9   Defendants' Motion; and (3) dismissing the First Amended Complaint and this

10  action without leave to amend.

11  DATED:  May 17, 2011

12

13                                         /s/

14                              Honorable Jacqueline Chooljian

15                              UNITED STATES MAGISTRATE JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28

13